**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue, Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

BRADLEY H. SCHLEIER, ESQ. #011696
Email: brad@schleierlaw.com
TOD F. SCHLEIER, ESQ. #004612
Email: tod@schleierlaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Mariquita Mullan, a married woman, | ) |
| | ) |
| Plaintiff, | ) Case No.: CV |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| CR Resorts, LLC, a Delaware Limited Liability Corporation; CR Employment, Inc., a Delaware corporation, | ) **(Jury Trial Demanded)** |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Mariquita Mullan, by and through counsel, for her Complaint against Defendants named above alleges as follows:

**I. JURISDICTION, VENUE AND PARTIES**

1. Plaintiff Mariquita Mullan is a married woman residing in the State of Maryland.

2. Defendant CR Resorts, LLC is a Delaware limited liability corporation whose principal place of business is in the State of Arizona. Defendant CR Employment, Inc. is a Delaware Corporation with a principal place of business in the State of Arizona. All of the above-named entities are collectively known as "Defendant Canyon Ranch."

3. Jurisdiction is proper in this Court pursuant to the Court's diversity jurisdiction as set forth in 28 U.S.C. §1332. Plaintiff is a resident of the State of Maryland and Defendant Canyon Ranch consists of entities domiciled in Arizona and Delaware each with its primary place of business located in Pima County, Arizona. The amount in controversy exceeds $75,000.

4. Venue is proper in this Court as Defendant Canyon Ranch conducts business in Pima County and all employment practices described herein occurred in Pima County, Arizona.

## II. FACTUAL ALLEGATIONS

**A.  Plaintiff's Employment.**

5. Plaintiff, a licensed psychologist, became employed by Defendant in October, 2015 as Director of Life Management in the Canyon Ranch, Tucson, Arizona location. Prior to her hire with Defendant Canyon Ranch, Plaintiff had over twenty-five years of experience in the behavioral health field with over a decade of managing and directing behavioral health programs.

6. Plaintiff was hired by Defendant Canyon Ranch following a three-month extensive interviewing process. At the time of Plaintiff's hire, she left her home and private clinical psychology practice in the Washington, DC area. In addition to being licensed as a clinical psychologist in Maryland and Massachusetts, she also obtained her licensing in the State of Arizona upon being hired.

7. At the time of her hire, Plaintiff was informed by Gary Frost, PHD, Health and Healing Officer, that Canyon Ranch was "extremely fortunate to have found someone of her qualifications and experience and they looked forward to many years of her work at the Ranch."

8. Dr. Mullan was hired to restore morale and reputation of the Life Management Department, which had suffered following the former Director's suicide.

9. Upon beginning her employment, Plaintiff found the Life Management Department to be in significant disarray and was providing services to clients far beyond psycho-education. Plaintiff participated in client meetings and quickly learned some clients were seeking and receiving short-term therapeutic treatment for disorders such as: severe anxiety, stress and grief; suicidal ideation; compulsive behaviors; borderline psychoses; and substance abuse problems to name a few.

10. Plaintiff expressed to Kristi Weber, Associate Director of Health and Healing, Plaintiff's concerns that the clientele's needs were far outside the scope of what the Life

Management Department was licensed or competent to provide. Ms. Weber dismissed Plaintiff's concerns and stated Plaintiff was "looking at this too seriously."

11. Plaintiff recognized that several of Defendant's staff members were poorly trained and not licensed or competent to provide the short-term psychotherapy offered to Defendant's clientele. Plaintiff also noted the psychological tests and assessments were inadequate, not comprehensive, or just plain wrong. Staff members were not qualified or sufficiently trained to provide interpretations or feedback to the clients. In addition, a number of the tests were designed to push clients to other services provided by Defendant such as hypnotherapy, biofeedback, cognitive assessments and motivational programs.

12. Plaintiff observed that psychological treatment provided by Defendant's staff was of substandard quality, and in many instances, veered directly into areas of malpractice.

13. Plaintiff also observed a lack of concern about patient confidentiality, especially with regard to client's records. Records that contained private medical information were left in public areas, and staff members discussed treatment of patients near other patients.

14. Plaintiff learned that when clients returned to their residences, many times outside of Arizona, tele-behavioral health treatment continued without following proper regulatory procedures. For instance, one Canyon Ranch client alerted staff to her concern that she was under immediate physical danger from her abusive partner who was also

staying at Canyon Ranch at the time. Dr. Mullan told management that Canyon Ranch needed to act and ask the abusive partner to leave, but Canyon Ranch refused.

15. Plaintiff raised the issues of licensing, testing, interpretation, psychological services provided to clients and concern about patient confidentiality with managers and co-workers, however, nothing changed.

**B.    Plaintiff's Reports.**

16. In January, 2016, Plaintiff informed Mr. Frost and co-founders Mel Zuckerman and Jerry Cohen, the Department should be renamed to "Behavioral Health Department" as it was providing substantial clinical mental health treatment, and suggesting Defendant needed to seek and obtain the proper Arizona licensing. Mr. Cohen immediately responded "no" and stated he did not want to call attention to the actual nature of the work. Mr. Cohen expressed clear annoyance at Dr. Mullan for raising her concerns.

17. In June, 2016, Plaintiff spoke with Joshua Luckow, Director of Health and Healing, and explained the Life Management Department was operating way beyond its clinical scope, was providing subpar therapeutic care and needed to scale back the scope of care or obtain licensing and training for staff. Mr. Luckow immediately became defensive and declared there was nothing wrong with what the Department was providing.

18. Plaintiff again spoke with Mr. Gary Frost and expressed her concern that Defendant could be seen as in violation of Arizona licensing regulations as it was operating beyond the boundaries of mere psycho-education. Mr. Frost did nothing to address Dr.

- 5 -

Mullan's concerns, and asked Dr. Mullan not to bother Mr. Luckow because he was preoccupied with opening another Canyon Ranch in Turkey.

19. Plaintiff began to experience retaliation for her reports relating to the licensing and regulatory issues in the Life Management Department. Mr. Frost expressed annoyance toward Plaintiff and began to treat Plaintiff differently. Ms. Weber refused to allow Plaintiff to change the Life Management Department's schedule to allow an occasional Saturday off, began to micromanage Plaintiff, and began to treat Plaintiff as an hourly employee. Mr. Luckow refused to meet or discuss issues with Plaintiff and provided almost no oversight, feedback or communication.

20. Plaintiff contacted Jane Curtin, Human Resources Director, and explained the harassment and retaliation from Ms. Weber. A meeting was conducted in July 2016, at which time Ms. Curtin expressed her opinion that Plaintiff's requests and concerns were reasonable.

21. Within months of reporting the potential illegal operations in the Life Management Department and only weeks after taking the issue to Human Resources, Plaintiff was terminated from her position on October 6, 2016. The reasons provided to Plaintiff were: (1) failure to meet the revenue goals of the Life Management Department; (2) she did not get along with co-workers; and (3) the position required more "energy" than Plaintiff appeared to have. Plaintiff had never been advised that revenue goals were part of her job description, and Plaintiff had not been afforded any notice of any alleged deficiency.

**COUNT ONE**
**(Violation of Employment Protection Act, ARS §23-1501)**

22. Plaintiff incorporates and alleges by reference all previous paragraphs of this Complaint as though fully set forth herein.

23. A.R.S. §23-1501 prohibits the termination of employment by an employer in retaliation of an employee's good faith report of suspected violations of Arizona law.

24. Plaintiff's termination was retaliatory and is in violation of A.R.S. §23-1501(c) due to her good faith report of the violation of Arizona law. Plaintiff reported on numerous occasions, to both co-founders, as well as Human Resources, Sr. Strategy and Operations Executive and Health and Healing Officer, her concerns about licensing violations, patient confidentiality, and Defendants' employees providing care and testing that was subpar and at times malpractice.

25. Specifically, Plaintiff reported conduct that would be a potential violation of Arizona law relating to licensing and regulations of facilities that provide behavioral health services as set forth in A.R.S. §36-401 *et seq.* and specifically A.R.S. §36-430. She also reported conduct that violated the licensing and regulation of Behavioral Health Professionals as set forth in A.R.S. §32-3251 *et. seq.* Finally, she also reported potential violations of client privacy rights as set forth in A.R.S. §12-2292.

26. Following her reports of illegal activities, Plaintiff was subjected to mistreatment in the workplace and ultimately fired within weeks of reporting to Human Resources the fact that she had been subjected to retaliation in the workplace.

27. Plaintiff was terminated for her good faith reports of violations of Arizona law in violation of A.R.S. §23-1501.

28. As a direct result of Defendants' retaliation, Plaintiff has sustained and continues to sustain damages in the form of lost compensation and loss of future wages and the value of benefits that continue to today and into the future. Additionally, Plaintiff has sustained damages in the form of relocation expenses and the costs of restarting her practice.

29. As a direct result of Defendants' unlawful conduct, Plaintiff has sustained emotional distress, including loss of reputation, loss of profession, and emotional pain, suffering, and humiliation.

30. Defendants' conduct in retaliating against Plaintiff was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive and/or exemplary damages.

**WHEREFORE,** Plaintiff demands judgment against each Defendant jointly as follows:

1. For general and special damages in amounts to be proven at trial;

2. For punitive and exemplary damages in an amount to be proven at trial; and

3. For such other and further relief as this Court deems just and proper.

/ / /

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

DATED this 13th day of December, 2017.

                                    SCHLEIER LAW OFFICES, P.C.


                                    By  /s/ Bradley H. Schleier
                                         Bradley H. Schleier
                                         Attorneys for Plaintiff